```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
ROSARIO MEJIA,

                         Plaintiff,
                                                          REPORT AND
                                                          RECOMMENDATION
                                                          CV 15-4353 (SJF)(GRB)
         -against-


ROMA CLEANING, INC, LISBON CLEANING,
INC. and JUAN PABLO MEJIA,

                         Defendants.
-------------------------------------------------------------X
```
**GARY R. BROWN, United States Magistrate Judge:**

Currently pending before the undersigned upon referral from the Honorable Sandra J. Feuerstein is defendants' motion for summary judgment in this action alleging, in sum and substance, discrimination and retaliation under the Family Medical Leave Act, 29 U.S.C. § 2601, *et seq.* (the "FMLA"). Because, on this record, defendants have failed to demonstrate the absence of genuine issues of material fact, the undersigned respectfully recommends that summary judgment be denied.

## PROCEDURAL HISTORY

On or about July 24, 2015, plaintiff commenced this action against defendants through the filing of a complaint, which purports to set forth causes of action for interference with and retaliation for the exercise of rights under the FMLA and state law, *inter alia*. DE 1. On or about January 19, 2016, defendants filed an answer raising 23 affirmative defenses. DE 2. The parties completed discovery without the need for court intervention. On September 26, 2016, defendants filed a fully briefed motion for summary judgment. DE 20. On March 8, 2017,

1

Judge Feuerstein referred the motion to the undersigned for report and recommendation. Electronic Order dated Mar. 8, 2017. This opinion follows.

## UNDISPUTED FACTS

Based upon the parties' Local Civil Rule ("LCR") 56.1 statements, the following facts, asserted by defendants, are undisputed or effectively undisputed by plaintiff:

Roma is a corporation that provides cleaning and janitorial services to JetBlue Airlines at its terminal in JFK Airport. *See* DE 20-1, 20-5, ¶ 1. Plaintiff was employed by Roma as a custodial employee assigned to the JetBlue Terminal, and whose responsibilities included general janitorial work, emptying garbage cans, sweeping and mopping floors and cleaning restrooms. *Id.* at ¶ 2. Plaintiff began her employment with Roma on or about April 27, 2007. *Id.* at ¶ 3.

Plaintiff received Roma's Employee Handbook, which advises employees about certain rights to family and medical leaves of absences, though the parties dispute the date upon which it was received. *Id.* at ¶¶ 4-5. The Employee Handbook, under "Disciplinary Action," states that an employee may receive "disciplinary action, up to and including dismissal" for "absenteeism" and "tardiness." *Id.* at ¶ 6. Roma provides general training on FMLA compliance to its managers. *Id.* at ¶ 7. Roma trains its managers how to recognize when FMLA leave may be appropriate even if an employee does not mention the FMLA and obtain the proper FMLA forms for employees. *Id.* at ¶¶ 8-9. Roma has Department of Labor-issued FMLA notices posted in its office at JFK Airport as well as the time clock area where employees clock in and out of work. *Id.* at ¶ 10.[1]

---

[1] Though not critical to the decision, this assertion provides an example of plaintiff's ineffective disputation of certain assertions. Regarding the contention that defendant posted these notices—which fact appears adequately documented—plaintiff labels this assertion as "disputed" based on

On a number of occasions, plaintiff was granted medical leave—including from January 3- February 2, 2009; April 24-27, 2009; May 28-June 1, 2010; April 30-May 8, 2011; October 1-24, 2011; April 28-May 1, 2012; October 27-30, 2012; and April 19-23, 2013. These leaves were granted in connection with several medical conditions, including bilateral carpal tunnel syndrome, bursitis and bronchitis. In each instance, plaintiff acknowledges that she was not penalized nor disciplined in any way for taking this leave, except that, plaintiff contends, these leaves were used as the basis to force her to accept a part-time position and ultimately terminate her. *Id.* at ¶¶ 13-21. Other than the documentation provided in connection with these leaves, plaintiff never submitted to defendants any other medical notes, reports, or certifications from her physician. *Id.*

In February 2013, plaintiff sought to reduce her work schedule from five to four days per week, to which defendants agreed. *Id.* at ¶ 24. It appears undisputed that plaintiff was late for work a number of times in 2012 and 2013, for reasons that are unclear. *Id.* at ¶¶ 25-26, 28. It is also effectively undisputed that plaintiff missed work on four days in 2013 after having exhausted her vacation days. *Id.* at ¶¶ 31-36.

The parties agree that as of January or February 2012, defendant Juan Pablo Mejia became the General Manager at Roma. *Id.* at ¶ 38. They also agree that "[h]aving been informed of plaintiff's multiple absences and tardiness, on July 16, 2013, Mr. Mejia met with plaintiff and informed her that she was being moved to part-time status." *Id.* at ¶ 39. Defendants assert that:

> Plaintiff did not accept the switch to part time employment, and never returned back to work [and that]

---

plaintiff's testimony that she "never saw" such a posting. *See* Rosario Mejia Dep. Tr. at 52, DE 20-11 at 15. The problem, of course, is that both assertions may well be true, and this issue is neither material nor truly in dispute.

> Mr. Mejia only heard from Plaintiff one time a few days after their meeting, but not since.

*Id.* at ¶¶ 40-41. Plaintiff attempts to dispute these assertions, citing a portion of the deposition of defendant Mejia. *Id.* (citing J.P. Mejia Dep. Tr. at 69-72, DE 20-13). The sections cited do not rebut the assertions, and further scrutiny of the deposition appears to bear out the fact that plaintiff did not provide him with an answer as to whether she was willing to accept part-time employment. J.P. Mejia Dep. Tr. at 69-75, DE 20-13. Further, this particular dispute is illusory, given that the plaintiff testified that she decided to refuse to accept part-time work, even though the alternative was losing her job, although this decision may have remained uncommunicated. *See* Rosario Mejia Dep. Tr. at 91, DE 20-11 at 25. Finally, it is undisputed that "Plaintiff does not allege that, on July 16, 2013, she suffered from any health condition that rendered her unable to work or perform other regular daily activities as a result." *See* DE 20-1, 20-5, ¶ 42.

On July 29, 2013, Plaintiff filed a Verified Complaint with the New York State Division of Human Rights ("DHR"), alleging that the actions of Roma constituted disability discrimination in violation of the New York Human Rights Law. After an investigation, the DHR dismissed Plaintiff's Verified Complaint after finding no probable cause as to her claim, ruling that Roma "articulated legitimate, non-discriminatory business reasons for its treatment of [Plaintiff's] employment which [Plaintiff] could not prove as pretext." *Id.* at ¶ 43.

As noted, plaintiff, in her counterstatement, asserts more than 60 paragraphs containing counterstatements of purportedly undisputed fact which defendant has not contested in a LCR 56.1 Reply Statement. Most are irrelevant to determination of this motion. The exceptions include the fact that plaintiff contends that a termination report by defendant Roma lists the effective date of her termination as November 15, 2013, and an attached copy bears this out. *See*

4

*id.* at ¶ 115; DE 20-26, Ex. 16. The significance of this unrebutted (and supported) counterstatement—as well as a few others of some relevance—is discussed below. Others, including those which are plainly irrelevant or are not supported in the record, have been disregarded.

## DISCUSSION

*i. Standard of Review*

"Summary judgment is appropriate if there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law." *Gonzalez v. City of Schenectady*, 728 F.3d 149, 154 (2d Cir. 2013); *see* Fed. R. Civ. P. 56(a). "In ruling on a summary judgment motion, the district court must resolve all ambiguities, and credit all factual inferences that could rationally be drawn, in favor of the party opposing summary judgment and determine whether there is a genuine dispute as to a material fact, raising an issue for trial." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 202 (2d Cir. 2007) (internal quotation marks and citation omitted); *see also Beyer v. County of Nassau*, 524 F.3d 160, 163 (2d Cir. 2008). "A fact is material if it might affect the outcome of the suit under governing law, and an issue of fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Ramos v. Baldor Specialty Foods, Inc.*, 687 F.3d 554, 558 (2d Cir. 2012) (internal quotation marks and citation omitted); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The moving party bears the initial burden of establishing "the absence of any genuine issue of material fact." *Garanti Finansal Kiralama A.S. v. Aqua Marine & Trading Inc.*, 697 F.3d 59, 73 n.18 (2d Cir. 2012) (internal quotation marks and citation omitted); *see Zalaski v. City of Bridgeport Police Dep't*, 613 F.3d 336, 340 (2d Cir. 2010). Once this burden is met, "the

opposing party must come forward with specific evidence demonstrating the existence of a genuine dispute of material fact." *Brown v. Eli Lilly & Co.*, 654 F.3d 347, 358 (2d Cir. 2011). Indeed, as Federal Rule of Civil Procedure ("Rule") 56(c)(1) provides:

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
>
> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1)(A) & (B). "The nonmoving party cannot defeat summary judgment by simply show[ing] that there is some metaphysical doubt as to the material facts, or by a factual argument based on conjecture or surmise." *McClellan v. Smith*, 439 F.3d 137, 144 (2d Cir. 2006) (internal quotation marks and citations omitted); *see Brown*, 654 F.3d at 358 (holding the non-movant "may not rely solely on conclusory allegations or unsubstantiated speculation" to defeat summary judgment). "The mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-movant]." *Hayut v. State Univ. of N.Y.*, 352 F.3d 733, 743 (2d Cir. 2003) (internal quotation marks and citation omitted) (alterations in original); *see also Anderson*, 477 U.S. at 247–48 ("[T]he mere existence of *some* alleged factual dispute between the parties alone will not defeat an otherwise properly supported motion for summary judgment.") (emphasis in original).

Specifically, with respect to an FMLA claim such as that asserted here, Judge Hurley has observed:

6

> In recent years, the Second Circuit has articulated the proper analysis to be applied to an FMLA retaliation claim, *i.e.,* the burden-shifting framework established by the Supreme Court in *McDonnell–Douglas*. See *Potenza v. City of New York*, 365 F.3d 165, 168 (2d Cir.), *af'd in part by*, 95 Fed. Appx. 390 (2d Cir. 2004); *see also Stevens v. Coach U.S.A.*, 386 F.Supp.2d 55, 61 (D.Conn. 2005). Thus, a plaintiff must first make out a prima facie case of retaliation which requires a plaintiff to
>> establish that: 1) he exercised rights protected under the FMLA; 2) he was qualified for his position; 3) he suffered an adverse employment action; and 4) the adverse employment action occurred under circumstances giving rise to an inference of retaliatory intent.
>
> *Potenza,* 365 F.3d at 168. If a plaintiff is successful in meeting this initial burden, the burden [then] shifts to the defendant to state a legitimate non-discriminatory reason for its action. If the defendant provides such a reason, the burden shifts back to the plaintiff to provide evidence from which a jury could conclude that the defendant's articulated reason for its action is pretextual and that the real reason for its action was retaliation for plaintiff's exercise of rights protected under the FMLA.
>
> *Stevens*, 386 F.Supp.2d at 61 (*citing McDonnell–Douglas*, 411 U.S. at 802–03; *Worster v. Carlson Wagon Lit Travel, Inc.*, 353 F.Supp.2d 257, 270 (D.Conn 2005)). However, "[o]rdinarily, plaintiff's evidence establishing a *prima facie* case and defendant's production of a nondiscriminatory reason for the employment action raise a question of fact to be resolved by the factfinder after a trial." *Carlton v. Mystic Transp., Inc.*, 202 F.3d 129, 135 (2d Cir.2000) (further citation omitted).

*Kuo v. Comput. Assocs. Intern., Inc.*, No. 05-cv-3295 (DRH)(JO), 2007 WL 2874845, at *5 (E.D.N.Y. Sept. 27, 2007). Thus, courts must engage in careful review when considering summary judgment in these circumstances. The Second Circuit has repeatedly held that:

> In discrimination cases, the inquiry into whether the plaintiff's sex (or race, etc.) caused the conduct at issue often requires an assessment of individuals' motivations and state of mind, matters that call for a sparing use of the summary judgment device because of juries' special advantages over judges in this area.

*Brown v. Henderson*, 257 F.3d 246, 251–52 (2d Cir. 2001); *see Redd v. New York Div. of Parole*, 678 F.3d 166, 178 (2d Cir. 2012) ("Although summary judgment in discrimination cases is fully appropriate, indeed mandated, when the evidence is insufficient to support the non-moving party's case, when, as is often the case in sexual harassment claims, fact questions such as state

7

of mind or intent are at issue, summary judgment should be used sparingly." (internal quotations marks and citations omitted)).

To oppose a motion for summary judgment, a party is required by the LCR to submit a Statement of Material Facts upon which it contends there "exists a genuine issue to be tried" and as to "each statement controverting any statement of material fact . . . must be followed by citation to evidence which would be admissible, set forth as required by Fed. R. Civ. P. 56(c)." Local Civ. R. 56(d); *Tuccio v. FJC Sec. Servs., Inc.*, No. CV 12-5506 (JFB) (GRB), 2014 WL 4438084, at *5 (E.D.N.Y. Aug. 18, 2014), *adopted by*, 2014 WL 4438469 (E.D.N.Y. Sept. 8, 2014), *appeal dismissed*, (Mar. 18, 2015). A party may not rest on a mere denial without citing supporting admissible evidence. "Merely denying certain statements in the moving party's statement of undisputed material facts without stating the factual basis for such denial and without disclosing where in the record is the evidence relied upon in making such denial does not constitute a 'separate, short, and concise statement of the material facts as to which it is contended that there exists a genuine issue to be tried'—as is required to controvert the moving party's statement of undisputed material facts." *Covelli v. Nat'l Fuel Gas Distrib. Corp.*, No. 99-cv-0500, 2001 WL 1823584, at *5 (W.D.N.Y. Dec. 6, 2001) (citing *Holtz v. Rockefeller & Co.,* 258 F.3d 62, 74 (2d Cir. 2001)), *aff'd*, 49 F. App'x 356 (2d Cir. 2002). Upon the failure to properly controvert a movant's statement of material fact, such statement "will be deemed admitted for the purposes of the motion." Local Civ. R. 56.1(c); *D.N. ex rel. D.N. v. Bd. of Educ. of Ctr. Moriches Union Free Sch. Dist.*, No. CV 14-99 GRB, 2015 WL 5822226, at *3 (E.D.N.Y. Sept. 28, 2015); *see also Edmonds v. Seavey*, No. 08 CIV. 5646 (HB), 2009 WL 2949757, at *1 (S.D.N.Y. Sept. 15, 2009), *aff'd*, 379 F. App'x 62 (2d Cir. 2010); *AFL Fresh &*

8

*Frozen Fruits & Vegetables, Inc. v. De-Mar Food Servs. Inc.*, No. 06 CIV. 2142 (GEL), 2007 WL 4302514, at *5 (S.D.N.Y. Dec. 7, 2007).

The non-movant's obligations under LCR 56.1 do not end with the submission of responsive statements. That rule provides:

> The papers opposing a motion for summary judgment shall include a correspondingly numbered paragraph responding to each numbered paragraph in the statement of the moving party, *and if necessary, additional paragraphs containing a separate, short and concise statement of additional material facts as to which it is contended that there exists a genuine issue to be tried.*

Local Civ. R. 56.1(b). In this case, plaintiff has responded to defendants' LCR 56.1 statement with disputations as well as numerous additional material facts as to which she claims there is a genuine issue to be tried. *See generally* DE 20-5. Defendants have not provided any factual response to plaintiff's counterstatement; indeed, the only reply offered by the defendants to plaintiff's voluminous response is a legal memorandum.

Interestingly, LCR 56.1 does not provide an express remedial mechanism where, as here, the *non-movant* proposes additional issues of purportedly undisputed fact in its counterstatement and the *movant* fails to respond to that counterstatement. This stands in contrast to that rule's specific provision regarding the failure of a *non-movant* to respond to a LCR 56.1 statement. *See* Local Civ. R. 56.1(c) ("Each numbered paragraph in the statement of material facts set forth in the statement required to be served by the moving party will be deemed to be admitted for purposes of the motion unless specifically controverted by a correspondingly numbered paragraph in the statement required to be served by the opposing party."); *Jackson v. Fed. Exp.*, 766 F.3d 189, 194 (2d Cir. 2014) ("[A] non-response runs the risk of unresponded-to statements of undisputed facts proffered by the movant being deemed admitted.").

At the same time, of course, district courts have "broad discretion to determine whether to overlook a party's failure to comply with local court rules." *Holtz*, 258 F.3d at 73.  And the Court may not rely solely upon the failure to controvert assertions made in a LCR 56.1 statement if those assertions are not supported in the record.  *See Giannullo v. City of New York*, 322 F.3d 139, 140 (2d Cir. 2003) ("[E]ven though plaintiff's Rule 56.1 counter-statement failed to specifically controvert these assertions, the unsupported assertions must nonetheless be disregarded and the record independently reviewed."); *cf. Jackson*, 766 F.3d at 196 (distinguishing *Giannullo* and upholding default where "each statement of proposed undisputed facts was supported by a citation to the record sufficient to prove each such fact").[2]  At a minimum, though, the provisions of Rule 56(c)(1), quoted above, apply.

In light of this standard, despite the voluminous filings made in connection with the motion, defendants' arguments are easily dispatched.

    ii.  *The Statute of Limitations*

Defendants' primary argument turns on the statute of limitations.  "FMLA claims are generally subject to a two-year statute of limitations, but that limitations period extends to three years when the violation is 'willful.'"  *Offor v. Mercy Med. Ctr.*, 676 F. App'x 51, 53 (2d Cir. 2017) (citing *Porter v. N.Y. Univ. Sch. of Law*, 392 F.3d 530, 531 (2d Cir. 2004)).  Under 29 U.S.C. § 2617(c)(1) & (2), plaintiff's time to commence this action runs from "the last event constituting the alleged violation for which the [FMLA] action is brought."  *See* Defs.' Mem. of Law at 10, DE 20-3.  This event, defendants contend, was July 16, 2013, a date upon which, defendants argue, defendant Mejia offered plaintiff the choice between accepting a part-time

---

[2] Review of the record here has been far from straightforward; the parties' massive filings were not well organized and seemingly laden with irrelevant material.  *See, e.g.*, DE 20-2 at 49-53.

10

schedule and termination. *Id.* This factual assertion is confirmed by plaintiff's deposition testimony:

> Q. Is it your contention that you were fired from Roma Cleaning?
> A. Yes.
>
> Q. When was your last date of employment at Roma Cleaning?
> A. July 15th, 2013.
>
> Q. Okay. So we can establish July 15th, 2013, as your last day at Roma Cleaning, correct?
> A. Correct

DE 20-11, Ex. 1 at 25. Thus, defendants argue that the filing of the complaint in this matter on July 24, 2015, "more than *one (1) week after* the expiration of the FMLA's two-year statute of limitations for non-willful claims," entitles defendants to summary judgment. Defs.' Mem. of Law at 10, DE 20-3 (italics in original).

Plaintiff proffers Roma's "Termination Report," which lists a "Termination Effective Date" of November 15, 2013, in a misguided effort to create a material issue of fact as to this issue. *See* DE 20-1 at ¶ 115; DE 20-26, Ex. 16. As defendants correctly point out, a number of cases suggest that the statute of limitations "in the case of a discriminatory discharge, starts running on the date when the employee receives a definite notice of the termination, not upon his discharge." *Miller v. Int'l Tel. & Telegraph Corp.*, 755 F.2d 20, 23 (2d Cir. 1985) (citing *Chardon v. Fernandez*, 454 U.S. 6 (1981)).[3] Thus, Plaintiff's introduction of the "Termination Effective Date" document is entirely a red herring. Because plaintiff filed this action more than

---

[3] Notably, and without legal citation of any kind, plaintiff puts forth that "Arguably, the last event constituting the FMLA violation occurred on November 15, 2013, when Defendants formally terminated Plaintiff's employment." This assertion is contrary to the case law cited above, and less than helpful to the Court.

two years after the last actionable violation, any claims arising from non-willful violations are clearly barred.[4]

Yet the question remains as to whether material issues of fact exist regarding a potential *willful* violation by defendants. While the parties fail to submit adequate briefing on this issue, some helpful guideposts can be culled from the existing case law along with the facts herein. Generally, the Second Circuit has held:

> The term "willful" is not specifically defined in the FMLA. In *McLaughlin v. Richland Shoe Co.,* 486 U.S. 128, 133, 108 S.Ct. 1677, 100 L.Ed.2d 115 (1988), the Supreme Court, in reviewing a claim under the Fair Labor Standards Act ("FLSA"), held that an employer acts willfully when he or she "knew or showed reckless disregard for the matter of whether its conduct was prohibited by the [FLSA]." The *McLaughlin* Court added that "[i]f an employer acts reasonably in determining its legal obligation, its action cannot be deemed willful .... If an employer acts unreasonably, but not recklessly, in determining its legal obligation, then ... it should not be ... considered [willful.]" *Id.* at 135 n. 13, 108 S.Ct. 1677.
>
> The First Circuit, in a thoughtful opinion, found that the Supreme Court's definition of willful in *McLaughlin* also applied to the FMLA. *See Hillstrom v. Best Western TLC Hotel*, 354 F.3d 27, 33-34 (1st Cir. 2003). We agree for the reasons stated by the First Circuit. *See also Ricco v. Potter*, 377 F.3d 599, 602-03 (6th Cir.2004) (adopting similar language).

*Porter v. N.Y. Univ. Sch. of Law*, 392 F.3d 530, 532 (2d Cir. 2004). Even a cursory reading of this standard strongly suggests a number of fact issues. While some plaintiffs have lost summary judgment based upon a failure to allege willful conduct, *see, e.g.*, *Ungerleider v. Fleet Mortg. Grp. of Fleet Bank*, 329 F. Supp. 2d 343, 363 (D. Conn. 2004) (summary judgment granted where complaint did not "contain a general averment as to willfulness"), that is clearly not the case here. *See* Compl. ¶ 122 (alleging that defendants "willfully violated" the FMLA); *id.* ¶ 124 (same); *id.* ¶ 130 (alleging defendant Mejia's "intentional and willful violations of the FMLA").

---

[4] Of course, this suggests that, at trial, plaintiff must establish willful violations of the statute.

Moreover, as this Court has previously held, "at least one court has found that 'a claim of retaliation [under the FMLA] is certainly a 'willful' violation and may be subject to the three-year statute of limitations.'" *Lewis v. N.Y.C. Police Dep't.*, 908 F. Supp. 2d 313, 325 (E.D.N.Y. 2012) (citing *Cinelli v. Oppenheim–Ephratah Cent. Sch. Dist.*, No. 6:07-CV-235 (DNH/GJD), 2008 WL 111174, at *6 (N.D.N.Y. Jan. 7, 2008)).

Here, where the plaintiff has not only alleged willful violations, but also has set forth facts suggestive of retaliation, one cannot conclude that there are no genuine material issues of fact on the question of willfulness. The issue of willfulness raises factual questions that, interestingly, may affect defendants differently and must be determined by the factfinder in this case. By way of example, it is undisputed by the parties that Roma provided FMLA training to its managers. *See* DE 20-1, 20-5, at ¶¶ 7-9. This fact could help establish that Roma "acted reasonably in determining its legal obligation, [and thus] its action cannot be deemed willful" while if such training was disregarded by defendant Mejia, this same training could help establish that he acted "recklessly." *Porter*, 392 F.3d at 532.

The record is replete with factual assertions that, if proven, could convince a jury that one or more defendants acted willfully. By way of example, records produced by the defendants show that plaintiff's supervisors recorded that she was "sick" on July 14, 2014, *see* DE 20-24 at 6 (ROMA0087),[5] while defendant Mejia testified that her supervisors were angry that she was a "no show/no call" that day, providing the basis for the subject adverse employment action. *See* J.P. Mejia Dep. Tr. at 75, DE 20-13 at 19. Furthermore, as discussed in further detail below,

---

[5] Notably, in their motion papers, plaintiff, though dubbing this fact "Crucial," mis-cites the document at ROMA0084. *See* DE 20-5 ¶ 106.

13

defendants' inconsistent explanations under oath about plaintiff's termination may also bear on the question of willfulness.

### iii. Plaintiff's Prima Facie Case

Defendants seek summary judgment contending that "there is no genuine issue of material fact demonstrating that she exercised rights protected under the FMLA, since Plaintiff cannot raise a triable issue of fact that she suffered from a serious health condition or that she provided Defendants with adequate notice of her intention to request intermittent leave." Defs.' Mem. of Law at 13, DE 20-3. Of course, such matters "[o]rdinarily . . . raise a question of fact to be resolved by the factfinder after a trial." *Carlton v. Mystic Transp., Inc.*, 202 F.3d 129, 135 (2d Cir. 2000). Setting aside that caveat, defendants' argument lacks a basis in fact on this record. As to plaintiff's health condition, defendants make a curious argument, stating:

> Thus, in the instant matter, in order for Plaintiff to demonstrate that she was entitled to intermittent FMLA leave, she must first provide sufficient evidence for a reasonable fact-finder to conclude that: (1) she suffered from an illness, injury, impairment or physical or mental condition; and that as a result (2) she was unable to work or perform other regular daily activities. However, Plaintiff has woefully failed to do so, as she has failed to provide any evidence, *aside from her own lay testimony and uncertified notes from her doctor*, demonstrating either.

Defs.' Mem. of Law at 14, DE 20-3 (emphasis added).[6] But the very nature of this assertion tends to lead to its rejection. Certainly, a plaintiff may establish a genuine issue of fact regarding

---

[6] Defendants' reference to *uncertified* notes in this assertion presumably relates to authenticity certifications pursuant to Federal Rule of Evidence ("FRE") 803(6). In response, plaintiff has provided certifications on this motion. Either way, medical records may be considered on a summary judgment motion even in absence of an FRE 803(6) certification. *See Perpall v. Pavetek Corp.*, No. 12-CV-0336 (PKC), 2017 WL 1155764, at *9 (E.D.N.Y. Mar. 27, 2017) (collecting cases).

14

the presence of an FLMA-qualifying illness or injury through sworn testimony[7] and medical records.

Defendants' effort to limit the inquiry here to evidence of plaintiff's maladies on July 16, 2013 is equally unavailing. As Judge Hurley held in *Kuo*:

> Though there is no bright-line rule, an adverse employment action following within a couple months of the protected activity typically suffices to establish causal connection. *See Cioffi v. Averill Park Cent. School Dist. Bd. of Educ.*, 444 F.3d 158, 168 (2d Cir. 2006) ("[T]he lapse of only several months after the letter and several weeks after the press conference between the protected speech and adverse employment action is sufficient to support an allegation of a causal connection strong enough to survive summary judgment.") (collecting cases); *Gormon–Bakos v. Cornell Co-op Extension of Schenectady*, 252 F.3d 545, 555 (2d Cir.2001) (passage of up to five months short enough for causal connection); *Grant v. Bethlehem Steel Corp.*, 622 F.2d 43, 45–46 (2d Cir.1980) (eight month period between filing of EEOC complaint and retaliating action sufficient to suggest causal relationship).

*Kuo*, 2007 WL 2874845, at *7. No authority cited by defendants or uncovered in this Court's research suggests otherwise.

*iv. Defendants' Justification for the Employment Action*

Defendants urge the Court to enter summary judgement because no material issues of fact remain regarding their articulation of a legitimate, non-discriminatory basis for the adverse employment action taken against plaintiff. Again, like the issue of plaintiff's *prima facie* case, defendants' purported justification for the termination generally "raise[s] a question of fact to be resolved by the factfinder after a trial." *Carlton*, 202 F.3d at 135.

---

[7] Defendants suggest that, based upon supposed inconsistencies, plaintiff's affidavit should be disregarded. "Defendants' claims of inconsistency, however, appear to be somewhat overstated; while Plaintiff's affidavit gives a more comprehensive list of her impairments than her deposition does, she did state in her deposition that similar categories of activities were difficult for her." *Davis v. Ogando*, No. 09-CV-2761 (SMG), 2011 WL 4975379, at *5 (E.D.N.Y. Oct. 19, 2011). Such is the case here.

15

In support of this position, counsel argues that "Defendants determined to switch Plaintiff from full-time to part-time as a result of her repeated absences and late arrivals to work over a six-month span." Defs.' Mem. of Law at 20, DE 20-3. But, as plaintiff correctly points out, this notion is undermined by defendants' sworn interrogatory answer, signed by Roma's HR Director, which provides, in relevant part:

> Defendants did not terminate Plaintiff's employment. Plaintiff abandoned her job when she was informed that, as a result of her numerous instances of unexcused tardiness and absences, her position would be temporarily reduced to from 40 hours to 32 hours per week so as to allow her deal with any family or personal issues during the course of the week.

DE 20-2 at 43, 55. Ironically, plaintiff's deposition offers some support for defendants' claim, though the details are far from clear. *See, e.g.*, Rosario Mejia Dep. Tr. at 88, DE 20-11 at 24 (plaintiff testified that defendant Mejia offered her a three-day per week work schedule "like a punishment that he was giving me because I was missing many days"). There is evidence, however, suggesting that the "missed days" were, in fact, FMLA leave days. *See, e.g.*, DE 20-9 at ¶ 51 (plaintiff's affidavit indicating "I told Defendant Mejia that it was unfair and that I had been absent for my medical issues"). Further, even the claim that plaintiff had unexcused absences remains very much in dispute. *See, e.g.*, DE 20-5 ¶ 74 (asserting, based upon plaintiff's affidavit and deposition testimony that "[o]n each of these occasions that Plaintiff was to miss work, Plaintiff complied with Defendants' rules and alert [sic] her supervisors prior to her shift").

Thus, while defendants may well be able to rebut plaintiff's *prima facie* case at trial, on this record, genuine issues of material fact remain.[8] Defendants' motion is therefore unfounded.

---

[8] For these same reasons, defendants' contention that they are entitled to summary judgment based on plaintiffs' purported failure to request FMLA leave is entirely without merit. As noted, it is unclear on this record as to the bases for adverse employment actions taken against plaintiff,

**CONCLUSION**

Based on the foregoing, it is respectfully recommended that defendants' motion for summary judgment be denied in all respects.

**OBJECTIONS**

A copy of this Report and Recommendation is being electronically filed with the representatives of each party. Any written objections to the Report and Recommendation must be filed with the Clerk of the Court within fourteen (14) days of service of this report. 28 U.S.C. § 636(b)(1) (2006 & Supp. V 2011); Fed. R. Civ. P. 6(a), 72(b).  Any requests for an extension of time for filing objections must be directed to the district judge assigned to this action prior to the expiration of the fourteen (14) day period for filing objections.  **Failure to file objections within fourteen (14) days will preclude further review of this Report and Recommendation either by the District Court or Court of Appeals.**  *Thomas v. Arn*, 474 U.S. 140, 145 (1985) ("[A] party shall file objections with the district court or else waive right to appeal."); *Caidor v. Onondaga Cnty.*, 517 F.3d 601, 604 (2d Cir. 2008) ("[F]ailure to object timely to a magistrate's report operates as a waiver of any further judicial review of the magistrate's decision.").

Dated: Central Islip, New York
July 6, 2017

/s/ Gary R. Brown
GARY R. BROWN
United States Magistrate Judge

---

and whether these actions were predicated upon FMLA leave which has been properly taken by plaintiff.

17