**FILED**
**CLERK**

11:49 am, Sep 25, 2017

**U.S. DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
**LONG ISLAND OFFICE**

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------x
ROSARIO MEJIA,

    Plaintiff,

                  v.

ROMA CLEANING, INC.,
LISBON CLEANING, INC., and
JUAN PABLO MEJIA,

    Defendants.
----------------------------------------------------------x

**ORDER**
Case No.: 15-cv-4353
(SJF)(GRB)

FEUERSTEIN, Senior District Judge.

I.    <u>Introduction</u>

Plaintiff Rosario Mejia ("Plaintiff") commenced this action pursuant to the Family Medical Leave Act ("FMLA" or "Act") against Defendants Roma Cleaning, Inc. ("Roma" or "Company") and Juan Pablo Mejia ("Mejia"[1]) (collectively, "Defendants"[2]).  She alleges that the Defendants willfully interfered with her attempts to exercise her rights under the FMLA and retaliated against her for taking leave pursuant to the FMLA.[3]  (ECF No. 1 at ¶¶122-130; hereafter, "Complaint".)  On January 19, 2016, the Defendants answered Plaintiff's Complaint, generally denying her allegations and raising twenty-two defenses including that "Plaintiff's claims are barred, in whole or in part, by the applicable statue of limitations."  (ECF 9 at 15 ("Fourth Separate Defense"); hereafter, "Answer".)

---

[1] It is undisputed that Mejia is not Plaintiff's blood relative.

[2] Defendant Lisbon Cleaning, Inc. was voluntarily dismissed from this action by Plaintiff on January 4, 2016.  (*See* ECF No. 7.)

[3] Plaintiff withdrew her second and third causes of action as against the Defendants.  (*See* ECF No. 8.)

On September 26, 2016, the Defendants filed a motion for summary judgment ("Summary Judgment Motion" or "Motion"), which included Plaintiff's opposition ("Opposition") thereto. (*See* ECF No. 20). The Motion was referred to Magistrate Judge Gary R. Brown on October 3, 2016. (*See* D.E. dated 10/03/2016.)

Now before the Court is Magistrate Judge Brown's Report and Recommendation, dated July 6, 2017, that Defendants' Motion be denied. (*See* ECF No. 26; hereafter, "Report".) On July 17, 17, 2017, Defendants filed their objection to the Report. (*See* ECF No. 27; hereafter, the "Objection".) The Plaintiff filed a response on August 2, 2017.[4] (*See* ECF No. 29; hereafter, "Response".) For the reasons that follow, the Court adopts the findings of the Report in part only and declines to follow the recommendation that Defendants' Summary Judgment Motion be denied.

II.   Applicable Standards

   *A. Report and Recommendation Standard of Review*

Rule 72 of the Federal Rules of Civil Procedure permits a magistrate judge to conduct proceedings of dispositive pretrial matters without the consent of the parties. *See* FED. R. CIV. P. 72(b). Any portion of a report and recommendation on dispositive matters to which a timely objection has been made is reviewed *de novo*. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). However, "when a party makes only conclusory or general objections, or simply reiterates the original arguments, the Court will review the report strictly for clear error." *Frankel v. City of*

---

[4]  On July 28, 2017, Plaintiff sought an extension to file her Response (*see* ECF No. 28), which was granted on July 31, 2017 (*see* D.E. dated 07/31/2017).

*N.Y.*, Nos. 06-cv-5450, 07-cv-3436, 2009 WL 465645, at *2 (S.D.N.Y. Feb. 25, 2009); *see also Butto v. Collecto, Inc.*, 290 F.R.D. 372, 379 (E.D.N.Y. 2013) ("In a case where a party makes only conclusory or general objections, or simply reiterates his original arguments, the Court reviews the Report and Recommendation only for clear error." (quotations and citation omitted)). The Court is not required to review the factual findings or legal conclusions of the magistrate judge as to which no proper objections are made. *See Thomas v. Arn*, 474 U.S. 140, 150, 106 S. Ct. 466, 88 L. Ed.2d 435 (1985). Whether or not proper objections have been filed, the district judge may, after review, accept, reject, or modify any of the magistrate judge's findings or recommendations. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b).

    B. *Summary Judgment Standard*

"Summary judgment is required where 'the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Rodriguez v. Vill. Green Realty, Inc.*, 788 F.3d 31, 39 (2d Cir. 2015)(quoting FED. R. CIV. P. 56(a)). And "when moving against a party who will bear the ultimate burden of proof on an issue, 'the movant's burden will be satisfied if he can point to an absence of evidence to support an essential element of the nonmoving party's claim.'" *Kwon v. Yun,* 606 F. Supp.2d 344, 355 (S.D.N.Y. 2009) (quoting *Goenaga v. March of Dimes Birth Defects Found.,* 51 F.3d 14, 18 (2d Cir. 1995)); *see also Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S. Ct. 2548 (1986) ("'The moving party is entitled to judgment as a matter of law [if] the non-moving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof.'") (internal quotation marks omitted). Although the evidence is viewed in favor of the non-moving party, *see Willey v. Kirkpatrick*, 801 F.3d 51, 62 (2d Cir. 2015), "the mere

existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the [fact-finder] could reasonably find for the plaintiff." *Jeffreys v. City of New York*, 426 F.3d 549, 554 (2d Cir. 2005)(internal alterations and quotation marks omitted). It is insufficient to "rely on conclusory allegations or unsubstantiated speculation" to defeat a summary judgment motion. *Id.* (Internal quotation marks omitted). Instead, when the moving party has documented particular facts in the record, "the opposing party 'must set forth specific facts showing that there is a genuine issue for trial,'" *Willimas v. Smith*, 781 F.2d 319, 323 (2d Cir. 1986)(quoting FED. R. CIV. P. 56(e)), which requires going beyond the allegations of the pleadings. *See Weinstock v. Columbia Univ.*, 224 F.3d 33, 41 (2d Cir. 2000) (citation omitted).

III.   Defendants' Objection to the Report

Defendants object to Magistrate Judge Brown's recommendation that their Summary Judgment Motion be denied. Specifically, they raise four alleged errors, *to wit*, the Magistrate Judge: (1) "[c]oncluding that there exists a genuine issue of material fact as to whether Defendants' engaged in a willful violation of the [FMLA], thus creating a dispute as to whether or not Plaintiff's Complaint is governed by the FMLA's alternative three-year statute of limitations;" (2) "[f]inding that Plaintiff had established the existence of genuine issues of material fact regarding her *prima facie* case for FMLA retaliation;" (3) "[d]eterminig that there existed genuine issues of material fact regarding Defendants' legitimate, non-retaliatory bases for the adverse employment action taken against Plaintiff;" and (4) "[n]ever conducting a summary judgment analysis regarding (or even making mention of) Plaintiff's FMLA interference claim."

(Objection at 1.) For the reasons that follow, the Court addresses the first objection only.

IV. Discussion

*A. The FMLA and its Statute of Limitations*

The FMLA permits eligible employees the right to take unpaid leave for up to twelve weeks for, *inter alia*, a serious health condition. *See Mathew v. North Shore-Long Island Jewish Health System, Inc.*, Case No. 11-cv-6022, 2013 WL 5799883, *6 (E.D.N.Y. Oct. 23, 2013) (citing 29 U.S.C. § 2612(a)(1)(D)). "Three kinds of leave are available to employees with a serious health condition: (1) one block of leave of twelve weeks or fewer; (2) intermittent leave, which means 'leave taken in separate periods of time due to a single illness or injury . . .'; and (3) reduced leave schedule, a plan under which the employer reduces the employee's normal work hours, usually to a part-time basis." *Slade v. Alfred University*, Case No. 11-cv-396, 2013 WL 6081710, *12 (W.D.N.Y. Nov. 19, 2013)(quoting *Hoffman v. Professional Med Team*, 394 F.3d 414, 418 (6th Cir. 2005)).

"In general, a plaintiff must file a claim under the FMLA no later than two (2) years after the employer's alleged violation. 29 U.S.C. § 2617(c)(1). This limitation period is extended to three (3) years when a plaintiff alleges that the employer's violation was willful. 29 U.S.C. § 2617(c)(2)." *Krosmico v. JP Morgan Chase & Co.*, Case No. 06-cv-1178 (SJF), 2006 WL 3050869, *2 (E.D.N.Y. Oct. 19, 2006). As this Court stated in *Krosmico*, "when 'a plaintiff sufficiently alleges facts supporting the claimed violation of the FMLA, a general averment as to willfulness should be sufficient to trigger the three-year limitations period.'" *Id.* (quoting *Ungerleider v. Fleet Mortg. Group of Fleet Bank*, 329 F. Supp.2d 343, 362 (D. Conn.

2004)(further citations omitted)); *see also Mathew*, 2013 WL 5799883, at *6 (general averment of willfulness sufficient to invoke FMLA three-year statute of limitations). However, while such allegations may be enough to avoid an early motion for dismissal, once discovery is completed, a plaintiff must have some evidence from which either a court or a reasonable fact-finder can find a willful FMLA violation. *See, e.g., Edwards v. Ford Motor Co.*, 179 F. Supp.2d 714, 719 (W.D. Ky. 2001).

The FMLA does not define "willful"; thus, the Second Circuit utilizes the Supreme Court's definition of that term as used in the context of the Fair Labor Standards Act. *See Porter v. New York Univ. Sch. of Law*, 392 F.3d 530, 531-32 (2d Cir. 2004) (citing *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133, 108 S. Ct. 1677 (1988)). According to the *McLaughlin* Court, "[i]f an employer acts reasonably in determining its legal obligation, its action cannot be deemed willful . . . . If an employer acts unreasonably, but not recklessly, in determining its legal obligation, then . . . it should not be . . . considered [willful.]" 486 U.S. at 135 n.13. "[A]n employer acts willfully when he or she 'kn[ows] or show[s] reckless disregard for the matter of whether its conduct was prohibited by the [Act].'" *Porter*, 392 at 531 (quoting *McLaughlin*, 486 U.S. at 133). "Neither an employer's 'good-faith but incorrect assumption' regarding its [FMLA] obligations, nor an employer's lack of a reasonable basis for believing that it was complying with the [FMLA], is by itself sufficient to demonstrate an employer's willfulness." *Saunders v. City of New York*, 594 F. Supp.2d 346, 358 (S.D.N.Y. 2008) (stated in the context of an FLSA case and quoting *McLaughlin*, 486 U.S. at 135). "'Should have known' implies a negligence or 'reasonable person' standard,' but reckless disregard 'involves actual knowledge of a legal requirement, and deliberate disregard of the risk that one is in violation.'" *Eschmann v.*

*White Plains Crane Servs., Inc.*, Case No. 11-cv-5881, 2014 WL 1224247, at * 6 (E.D.N.Y. Mar. 24, 2014)(quoting *Hart v. Rick's Cabaret Int'l, Inc.*, 967 F. Supp.2d 901, 937-38 (S.D.N.Y. 2013)); *see also Clarke v. JP Morgan Chase Bank N.A.*, Case No. 08-cv-2400, 2010 U.S. Dist. LEXIS 33264, * 27 (S.D.N.Y. Mar. 26, 2010)("'Reckless disregard . . . involves actual knowledge of a legal requirement, and deliberate disregard of the risk that one is in violation.'" (quoting *Damassia v. Duane Reade, Inc.*, Case No. 04-cv-8819, 2005 U.S. Dist. LEXIS 9768, at *7 n.2 (S.D.N.Y. May 20, 2005)). "It is the plaintiff's burden to show willfulness." *Saunders*, 594 F. Supp.2d at 358-59 (citing *McLaughlin*, 486 U.S. at 133).

> *B. Consideration of Defendants' Objection to the Magistrate Judge's Recommendation Regarding the FMLA Three-Year Statue of Limitations*

    1.    Preliminary Discussion

Plaintiff's argument regarding the alleged violations of FMLA is that her absence from work on July 14, 2013 was FMLA-qualified, and the Defendants' July 16, 2013 temporary change of her hours to part-time was a willful violation of the Act. Under the facts of this case, such a temporally myopic view of what occurred is insufficient without examination of the context of the course of Plaintiff's employment with Roma, especially during 2012 and 2013.

Magistrate Judge Brown aptly reported Plaintiff's employment history with Roma, which commenced on April 27, 2007. Pertinent to the present matter:

> On a number of occasions, plaintiff was granted medical leave—including from January 3- February 2, 2009; April 24-27, 2009; May 28-June 1, 2010; April 30-May 8, 2011; October 1-24, 2011; April 28-May 1, 2012; October 27-30, 2012; and April 19- 23, 2013.[5] These leaves were granted *in connection with several*

---

[5] Regarding the April 19-23, 2013 absence, the Court notes that notwithstanding Plaintiff's contention that that absence was due to "a pain and infection in my arm caused by the bursitis"

*medical conditions*, including bilateral carpal tunnel syndrome, bursitis and bronchitis. In each instance, plaintiff acknowledges that she was not penalized nor disciplined in any way for taking this leave, except that, plaintiff contends, these leaves were used as the basis to force her to accept a part-time position and ultimately terminate her. [Statements of Undisputed Facts, ECF Nos 20-1, 20-5] at ¶¶ 13-21. Other than the documentation provided in connection with these leaves, plaintiff never submitted to defendants any other medical notes, reports, or certifications from her physician. *Id.*

In February 2013, plaintiff sought to reduce her work schedule from five to four days per week, to which defendants agreed. *Id.* at ¶ 24. It appears undisputed that plaintiff was late for work a number of times in 2012 and 2013, for reasons that are unclear. *Id.* at ¶¶ 25-26, 28. It is also effectively undisputed that plaintiff missed work on four days in 2013 after having exhausted her vacation days. *Id.* at ¶¶ 31-36.

The parties agree that as of January or February 2012, defendant Juan Pablo Mejia became the General Manager at Roma. *Id.* at ¶ 38. They also agree that "[h]aving been informed of plaintiff's multiple absences and tardiness, on July 16, 2013, Mr. Mejia met with plaintiff and informed her that she was being moved to part-time status." *Id.* at ¶ 39. Defendants assert that:

> Plaintiff did not accept the switch to part time employment, and never returned back to work [and that] Mr. Mejia only heard from Plaintiff one time a few days after their meeting, but not since.

*Id.* at ¶¶ 40-41. Plaintiff attempts to dispute these assertions, citing a portion of the deposition of defendant Mejia. *Id.* (citing J.P. Mejia Dep. Tr. at 69-72, DE 20-13). The sections cited do not rebut the assertions, and further scrutiny of the deposition appears to bear out the fact that plaintiff did not provide him with an answer as to whether she was willing to accept part-time employment. J.P. Mejia Dep. Tr. at 69-75, DE 20-13. Further, this particular dispute is illusory, given that the plaintiff testified that

---

(Plaintiff's Affidavit at ¶17 (ECF No. 20-9)), the medical note she submitted to Roma does not convey any such information. Instead, it states: "PATIENT EXCUSE Rosario Mejia was seen on 04/19/2013 and is excused from work starting 04/19/2013 through 04/23/2013. Restriction(s): Ms. Mejia is scheduled to see her psycisian [(*sic*)] on Monday 4/22". (Ex. T, attached to Weiner Cert. (ECF No. 20-2 at 229).) Moreover, at her deposition, Plaintiff testified that she was absent from work those days because of a rash, not bursitis. (*See* Pl.'s Depo. Tr. at 151:19-152:4 (ECF No. 20-11).)

> she decided to refuse to accept part-time work, even though the alternative was losing her job, although this decision may have remained uncommunicated. *See* Rosario Mejia Dep. Tr. at 91, DE 20-11 at 25. Finally, *it is undisputed that "Plaintiff does not allege that, on July 16, 2013, she suffered from any health condition that rendered her unable to work or perform other regular daily activities as a result." See* [*id.* at] ¶ 42.

(Report at 3-4 (emphasis added).) By way of clarification: On Sunday, July 14, 2013, Plaintiff called the weekend supervisor, Mr. Batista, on his cell phone to inform him she would not be reporting to work, allegedly having told him she had pain in her arm and a fever. (*See* Pl.'s Depo. Tr. at 93-94 (ECF No. 20-11).) Evidence shows Plaintiff was marked as "Sick" on the Company's July 14th assignment sheet. (*See* ECF No. 20-24 at 6.) While she called "the office", Plaintiff did not report her July 14th absence to Mejia. (*See* Pl.'s Depo. Tr. at 93:10-22.) Plaintiff contends this absence from work was FMLA-qualified and, therefore, the Defendants' July 16, 2013 action of switching her to part-time status willfully violated FMLA.

      2.      The Magistrate Judge's Determination Regarding the FMLA Two-Year Statute of Limitation

As an initial matter, Magistrate Judge Brown determined that "Plaintiff filed this action more than two years after the last actionable violation [(*i.e.*, July 16, 2013, the day Plaintiff was presented with the choice of part-time work or termination)]," such that any FMLA "claims arising from non-willful violations are clearly time barred." (Report at 11-12.) Neither Defendants nor Plaintiff have objected to this recommendation; therefore, they have waived any further judicial review of the Magistrate Judge's decision regarding the FMLA's two-year statute of limitation. *See Caidor v. Onondaga Cnty.*, 517 F.3d 601, 604 (2d Cir. 2008) ("[F]ailure to object timely to a magistrate's report operates as a waiver of any further judicial review of the

magistrate's decision."). Hence, to proceed with her claims of interference and retaliation, Plaintiff must prove the Defendants willfully violated her FMLA rights.

### 3. The Magistrate Judge's Determination Regarding the FMLA Three-Year Statute of Limitation

Relying upon a note in *Lewis v. New York City Police Department*, 908 F. Supp.2d 313, 325 n.4[6] (E.D.N.Y. 2012), which quoted from *Cinelli v. Oppenheim-Ephratah Center School District*, Case No. 6:07-cv-235, 2008 WL 111174 (N.D.N.Y. Jan. 7, 2008), Magistrate Judge Brown stated, "where the plaintiff has not only alleged willful violations, but also has set forth facts suggestive of retaliation, one cannot conclude that there are no genuine material issues of fact on the question of willfulness." (*Id.* at 13.)

In *Lewis*, the district court determined that a plaintiff's FMLA interference claims were subject to the two-year statute of limitation and were untimely. *See Lewis* at 908 F. Supp.2d at 325. In a footnote and in a perfunctory manner, the district court stated:

> Notwithstanding this determination, the court finds that [p]laintiff's [earlier] requests for FMLA leave are timely as to her FMLA retaliation claim, as at least one court has found that "a claim of retaliation [under the FMLA] is certainly a 'willful' violation and *may* be subject to the three-year statute of limitations.'"

*Id.* (quoting Cinelli, 2008 WL 111174, at *6)(emphasis added). However, without the benefit of discussion or analysis, this Court finds the *Lewis* footnote unhelpful to the issue at hand. First, the use of the conditional term "may" by the *Cinelli* court underscores that all FMLA retaliation claims are not *per se* subject to the FMLA's three-year statute of limitation. Rather, as the

---

[6] While the Report's citation to *Lewis* identifies page 325 of the opinion, upon further review, the quoted text is found in note 4 on that page.

*Cinelli* court correctly recognized, the FMLA has a two-tiered statute of limitations: "The statute provides for a two year statute of limitations for all but 'willful violations.'" *Cinelli*, 2008 WL 111174, at *4 (citing 29 U.S.C. § 2617(c)(1)). More important, however, is the fact that the *Cinelli* Court was addressing a motion to amend an FMLA complaint. As noted above, during the pleading stage of an FMLA case, allegations of willfulness are sufficient to trigger the FMLA three-year statute of limitation; however, once a court is presented with a summary judgment motion, more is required. "An [FMLA] plaintiff seeking to invoke the three-year limitations period cannot survive a motion for summary judgment unless he 'make[s] a competent demonstration that there [is a] trial worthy issue as to whether [the employer] 'either knew or showed reckless disregard for the matter of whether its conduct was prohibited by statute.'" *Clarke*, 2010 U.S. Dist. LEXIS 33264, at *29 (further citations omitted). To do so, an FMLA plaintiff needs to offer credible evidence to support her argument that defendants were reckless in their alleged deliberate disregard of the FMLA. *See id.* at *27. Thus, here, the teachings of *Lewis* and *Cinelli* are not relevant.

   Second, in determining there are genuine material issues of fact as to willfulness, Magistrate Judge Brown continued, stating that "[t]he issue of willfulness raises factual questions that, interestingly, may affect defendants differently and must be determined by the factfinder in this case." (Report at 13.) By way of illustration, he acknowledged that "it is undisputed by the parties that Roma provided FMLA training to its managers," of whom Mejia was one, and that "fact could help establish that Roma 'acted reasonably in determining its legal obligations, [and thus] its action cannot be deemed willful' . . . ." (Report at 13 (citing ECF Nos 20-1, 20-5 at ¶¶ 7-9; brackets in Report).) He then posited that "*if* such training was disregarded by . . . Mejia,

this same training could help establish that he acted 'recklessly.'" (*Id.* (citing *Porter*, 392 F.3d at 532) (emphasis added).) However, Plaintiff has not presented any evidence suggesting Mejia may have or did disregard the training, such that a triable issue regarding recklessness exists. In the absence of such evidence, a reasonable fact-finder would be precluded from finding in Plaintiff's favors as to that proposition.

Third, the Magistrate Judge found that a jury could find that Mejia's deposition testimony "that [Plaintiff's] supervisors were angry that she was a 'no show/no call' [on July 14, 2013] *provid[ed] the basis for the subject adverse employment action*." (Report at 13 (citing Mejia Depo. Tr. at 75)(emphasis added).) However, Mejia testified that it was the weekend supervisor – singular – who was mad that Plaintiff was calling out again during a weekend. (*See id.; see also id.* at 72:3-23.) That supervisor was Batista. (*See* ECF No 20-24 at 6.) Indeed, Plaintiff herself acknowledged that the reason for her change of schedule might have been because she had missed other days and she was late in 2013 (*See* Pl.'s Depo. Tr. at 117:11-21.) In any event, "[m]erely calling in sick . . . is insufficient to put a company on notice that an employee is requesting leave that may be eligible under the FMLA." *Brown v. The Pension Boards, United Church of Christ*, 488 F. Supp.2d 395, 409 (S.D.N.Y. 2007) (citing *Slaughter v. Am. Bldg. Maintenance Co. of N.Y.*, 64 F. Supp.2d 319, at 326 (S.D.N.Y. 1999)(collecting cases)). Thus, the facts surrounding Defendants' decision to switch Plaintiff to part-time status fail to even raise an inference of unreasonableness, much less willfulness regarding Defendants' FMLA obligations.[7]

---

[7] Indeed and assuming, *arguendo*, that Mejia knew Plaintiff called in sick on July 14th, the Company's offer of part-time work demonstrates a willingness to accommodate Plaintiff. *See, e.g., Honeycutt v. Baltimore County, MD*, Case No. 06-cv-0958, 2007 WL 1858691, at *3 (D.

According to the testimony of one of Plaintiff's supervisors, Mr. Encarnocion, one or two times, a "*long time ago*", Plaintiff told him "[s]he had some problems with her arm . . . [h]er arm was in pain." (Encarnacion Depo. Tr. at 13:16-22 (emphasis added), Ex. G to Weiner Cert. (ECF No. 20-2 at 144-165.) Encarnacion further testified that when Plaintiff would leave early, "she did not tell [him] it was because she was in pain or because her arm was in pain," but "[s]he used to always say she had to go out because something was going on with her grand kids." (*Id.* at 14:5-7, 12-14; *see also id.* at 17:9-11 ("She used to talk to me a lot about her grand kids. She used to say that she had to dedicate time to her grand kids."); *see also id.* at 18:6-9.) Significantly, Supervisor Encarnacion also testified that Plaintiff never told him she was incapable of doing her work because of her pain. (*See id.* at 14:19-24.) It is noted that Plaintiff offered no evidence from Supervisor Batista, having failed to depose him or secure his affidavit. Without such evidence from Batista as to Plaintiff's reason for her absence on July 14th, as well as his discussion(s), with Mejia regarding Plaintiff's several other absences from work, the Court has before it Plaintiff's conclusory statements and conjecture,[8] which are insufficient to defeat summary judgment. *See Ridinger v. Dow Jones & Co., Inc.*, 651 F.3d 309, 317 (2d Cir. 2011)(citation omitted); *see also Cooper v. N.Y.S. Nurses Ass'n*, 847 F. Supp.2d 437, 446 (E.D.N.Y. 2012)("When no rational jury could find in favor of the nonmoving party because the

---

Md. June 18, 2007)("Attempts to accommodate an employee's disability or condition also indicate a lack of willfulness on the employer's part.")(citing *Samuels v. Kansas City Missouri Sch. Dist.*, 437 F.3d 797, 804 (8th Cir. 2006)).

[8] To the extent Plaintiff testified about co-workers knowing of her bursitis (*see, e.g.*, Pl.'s Depo. Tr. at 141-145), such testimony is inadmissible hearsay. Plaintiff failed to produce affidavits or deposition testimony from these co-workers. In any event, assuming they knew of Plaintiff's bursitis does not establish that the Defendants, likewise, were aware of Plaintiff's alleged condition.

evidence to support its case is so slight, there is no genuine issue of material fact and a grant of summary judgment is proper." (quoting *Gallo v. Prudential Residential Servs., L.P.*, 22 F.3d 1219, at 1224 (2d Cir. 1994)).  Based upon the dearth of evidence, a reasonable fact-finder would be unable to find in Plaintiff's favor; *i.e.*, that Defendants acted in reckless disregard of its FMLA obligations when they informed Plaintiff of their decision to temporarily switch her to a part-time schedule.

  Further, Plaintiff's own deposition testimony undercuts her claim of Defendants' willfulness.  For example, despite testifying that the Company denied her December 2012 request for a reduced work schedule because it did not have any part-time positions (*see* Pl.'s Depo. Tr. 106:10-17), in February 2013, when Plaintiff asked for a reduced work-week, the Company granted that request. (*See id.* 106:18-23.)  Plaintiff never asked for any other intermittent time off (*see id.* at 107:14-20), and, in fact, insisted that she wanted full-time work, since she could not support herself with part-time work. (*See id.* at 118:20-24; *see also id.* at 124:10-12.) Moreover, Plaintiff stated that as of July 16, 2013, she was physically capable of working full-time. (*See id.* at 155:5-12; *see also* Mejia Depo. Tr. at 84:3-85:15 (testifying that Plaintiff refused a change in position, despite pain, and insisting she could still perform her job).)  Indeed, Plaintiff testified that as of July 16, 2013, she was not constantly being treated for her bursitis. (*See id.* at 154: 11-21.)  She also testified that it was possible Mejia terminated her because of missed days and latenesses in 2013. (*See id.* at 117:11-21; *see also id.* at 103:3-104:6 (acknowledging being late to work possibly up to twelve times in 2012, at least five times in 2013, and leaving work early during 2013).)

  Finally, to the extent the Magistrate Judge based his finding on Defendants' purported

"inconsistent explanations under oath about [P]laintiff's termination" (Report at 14), this Court is unpersuaded.  The Magistrate Judge first points to a statement made by Defendants in their supporting memorandum to their Summary Judgment Motion, *to wit*: "Defendants determined to switch Plaintiff from full-time to part-time as a result of her repeated absences and late arrivals to work over a six-month span."  (Report at 16 (quoting Defs.'s Memo. In Supp. at 20).)  Magistrate Judge Brown agreed with Plaintiff that

> this notion is undermined by [D]efendants' sworn interrogatory answer, signed by Roma's HR Director, which provides, in relevant part:
>
>> Defendants did not terminate Plaintiff's employment.  Plaintiff abandoned her job when she was informed that, as a result of her numerous instances of unexcused tardiness and absences, her position would be temporarily reduced to from 40 hours to 32 hours per week so as to allow her [to] deal with any family or personal issues during the course of the week.

(*Id.* (quoting ECF No. 20-2 at 43, 55).)

However, as the Defendants contend, these statements are not inconsistent; they both convey that Defendants' proposes change of Plaintiff's hours from full-time to part-time where based on Plaintiff's numerous instances of lateness and absences.  The only significant difference between the two statements is the HR Director's explanation, *i.e.*, the proposed change was to provide Plaintiff time to "deal with any family or personal issues".  However, the Court finds the HR Director's added explanation does not create any material disputed fact on the issue of the Defendants' willfulness in allegedly violating Plaintiff's FMLA rights.  At best, the explanation demonstrate a good-faith but incorrect assumption regarding the Defendants' FMLA obligations.

This is insufficient to demonstrate willfulness. *See Saunders*, 594 F. Supp.2d at 358.

In sum, on the present summary judgment record, there is an absence of evidence to support a finding of Defendants' willful disregard of their FMLA obligations to Plaintiff. Therefore, Plaintiff's claims of FMLA interference and FMLA retaliation are time-barred, and Defendants are entitled to summary judgment as a matter of law.

\* \* \*

Having considered the Defendants' objections to the Report and conducted a *de novo* review of the summary judgment record, the Court: (1) adopts the Magistrate Judge's (a) findings of undisputed facts (*see* Report at 2-5), and (b) determination that Plaintiff's claims are time-barred under the FMLA's two-year statute of limitations absent a finding of willfulness (*see id.* at 10-12), but (2) sustains the Defendants' objection regarding the Magistrate Judge's determination that there is a material dispute of fact as to Defendants' willful disregard of their FMLA obligations, and (3) declines to consider (a) the Magistrate Judge's recommendation as to Plaintiff's *prima facie* case for FMLA retaliation, and (b) the Defendants' further objections.

V.     Conclusion

Accordingly, IT IS HEREBY ORDERED that Defendants' Summary Judgment Motion is granted; Plaintiff's Complaint is dismissed in its entirety with prejudice. The Clerk of Court is directed to close this case.

Dated this 25th day of September 2017 at Central Islip, New York.

\_/s/\_ *Sandra J. Feuerstein*_____
Sandra J. Feuerstein
United States District Judge